# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1)   LADON E. HILL**, | |
| **Plaintiff**, | |
| **v.** | **Case No. 17-CV-00227-CVE-JFJ** |
| **(1)   MEMORIAL DRIVE UNITED METHODIST CHURCH, a not-for-profit Religious organization,** | **JURY TRIAL DEMANDED** |
| **Defendant**. | |

## DEFENDANT MEMORIAL DRIVE UNITED METHODIST CHURCH'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

COMES NOW Defendant Memorial Drive United Methodist Church and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby files this Motion for Summary Judgment and Brief in Support.

Respectfully submitted,

**BEST & SHARP**

Thomas A. LeBlanc, OBA#14768
tleblanc@bestsharp.com
Carrie B. McNeer, OBA #22235
cmcneer@bestsharp.com
Williams Center Tower 1
One West Third Street, Suite 900
Tulsa, OK 74103
Telephone: (918) 582-1234
Facsimile: (918) 585-9447
*Attorneys for Defendant, Memorial Drive United Methodist Church*

{00457021}

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**</u>

COMES NOW Defendant Memorial Drive United Methodist Church (hereinafter "MDUMC") and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby files this Motion for Summary Judgment and Brief in Support.

## I.   INTRODUCTION

On or about July 1, 2004, Plaintiff was hired as a part-time youth minister at MDUMC. He served well in his position for several years. However, in late 2012, Plaintiff became enraged regarding the termination of his boss, Shawna Genshaw, the Director of Children and Youth Services[1], and his anger manifested into a downward spiral of hostility towards the church leadership. Plaintiff's behavioral problems included willful destruction of church property, inappropriate displays of anger, threatening church members, antagonism of church leadership, and disruption of church services. As a result of Plaintiff's insubordinate conduct, the MDUMC's Staff Parish Relations Committee voted to terminate Plaintiff's employment on February 10, 2013.

Plaintiff claims that he was terminated by MDUMC in violation of 42 U.S.C. § 1981 "by terminating Plaintiff based on his race and retaliating against him for complaining of racial conduct." *See* Doc. No. 2-2 at ¶ 4. However, Plaintiff has absolutely no evidence to support said allegations. Plaintiff's employment with MDUMC was terminated for legitimate, nondiscriminatory reasons – his own destructive behavior, which interfered with his ability to be an effective youth pastor for the church. Plaintiff was counseled by MDUMC regarding these issues; however, his defiant behavior and antagonism continued, and his employment was rightfully terminated.

---

[1] It was suspected that Plaintiff had or wanted an intimate relationship with Ms. Genshaw.

## II.   STATEMENT OF UNCONTROVERTED FACTS

1.   MDUMC hired Plaintiff, an African American, as a part-time youth minister in 2004.
     *See* Doc. No. 13, Stipulations, Section C and Doc. No. 2.2, ¶ 4.   *See also* Exhibit 1,
     LaDon Hill's deposition, pgs. 17-18.

2.   In 2012, MDUMC's Director of Children and Youth Services, Shawna Genshaw, was on
     a leave of absence, and the church staff was instructed to only share that she was "taking
     time off to deal with personal issues."  *See* Exhibit 2, September 10, 2012 email; Exhibit
     1, LaDon Hill's deposition, pgs. 67-68.

3.   Despite MDUMC's instructions, Plaintiff shared with members of the congregation that
     Ms. Genshaw was on "study leave", which he admitted was in violation of his employer's
     instructions.  *See* Exhibit 1, LaDon Hill's deposition, pgs. 67-68, 70. (Q.  What you did
     was contrary to what your employer had instructed you, even though you felt morally it
     was the right thing to do; is that right?  A.  Yeah.)

4.   On October 9, 2012, Ms. Genshaw was terminated.  When Plaintiff learned of Ms.
     Genshaw's termination, he picked up a 5-pound ankle weight and threw it into the wall.
     He left and "almost tore a door off the hinge."  He eventually came back and said to a
     church leader, "I feel like I want to rip somebody's head off".  *See* Exhibit 1, LaDon
     Hill's deposition, pgs. 25, 42, 52-56; Exhibit 3, LaDon Hill's timeline.

5.   On October 28, 2012, during a church service, Plaintiff grabbed a microphone and
     publicly complained that Ms. Genshaw was "fired for no reason".  *See* Exhibit 1, LaDon
     Hill's deposition, pgs. 64-66; Exhibit 3, LaDon Hill's timeline.  Plaintiff admitted that he
     could see how church administration was unhappy with his announcement to the
     congregation.  *See* Exhibit 1, LaDon Hill's deposition, pgs. 66-67 ("I could see how they

might be unhappy.")

6. On November 7, 2012, Plaintiff submitted an article for publication in the church newsletter and proposed a youth council meeting to voice concerns, stating it was "time to RISE!"  MDUMC's pastor edited the article and explained that the article did not "promote the reconciliation, healing and forgiveness".  *See* Exhibit 4, November 7, 2012 emails; Exhibit 1, LaDon Hill's deposition, pgs. 62-63.  In response, Plaintiff emailed church leadership and continued to complain about Ms. Genshaw's termination and stated, "So you guys come up with some new lies, because I am getting bored with the current ones.  You guys started the fire, the fire rises."  *See* Exhibit 4, November 7, 2012 email.

7. On November 11, 2012, eight to ten youth were found with no supervision in violation of the MDUMC Safe Sanctuaries policy.  *See* Exhibit 5, Employee Warning Notification; Exhibit 10, Policy.  The youth also interrupted the second church service by being escorted to the front row during the sermon and Plaintiff was given a written warning regarding these incidents.  *Id.*

8. On November 12, 2012, it was discovered that Plaintiff sent a text message to a "big group", including parents of MDUMC youth, referring to his supervisor, the MDUMC pastor, as "Bane", a supervillain in Batman comic books, conveying that the pastor was a bad person with evil behavior.  *See* Exhibit 1, LaDon Hill's deposition, pgs. 78-79, 83-85; Exhibit 11, November 12, 2012 conference call; Exhibit 3, LaDon Hill's timeline.

9. Plaintiff testified regarding his belief that Pastor Sharon bullied everyone without regard to race.  *See* Exhibit 1, LaDon Hill's deposition, pgs. 44-45, 51 ("I believe ***everybody*** left because of Pastor Sharon's management style") (emphasis added).

Q.      By the way, all of these other employees who have resigned, including Shawna, who was terminated, so everybody that you know of who either was fired or left because they were basically run out, are they – what race are they?

A.      They were – oh, boy – white; one lady was Native America – or, she was – had some Native American in them, but predominantly Caucasian.  And Sarah, she went back to school – now, that's what they say – but she had some Native American in her, too.

Q.      And what about Shawna, is she Caucasian?

A.      She's Caucasian.

*See* Exhibit 1, LaDon Hill's deposition, pgs. 73-74.

10. On November 13, 2012, MDUMC's pastor had a meeting with Plaintiff and he was handed five employee warning notifications, which he reviewed and signed.  *See* Exhibits 5 - 9, Employee Warning Notifications.  Plaintiff was allowed to write remarks on the employee warning notifications; notably, he never denied doing any of the things that he was accused of.  *See* Exhibit 1, LaDon Hill's deposition, pgs. 87-88, 99.  Plaintiff was asked if he realized the harm he was doing to the church and asked him if he could move on.  Plaintiff informed them "no, I would not be moving on until justice is done" – "justice for Shawna".  *See* Exhibit 1, LaDon Hill's deposition, pgs. 94-97.

11. On December 9, 2012, Plaintiff had an argument with a parent of one of his youth members.  *See* Exhibit 3, LaDon Hill's timeline; Exhibit 1, LaDon Hill's deposition, pgs. 101-102.  Plaintiff told the parent that "she needed to mind her effing business."  *See* Exhibit 1, LaDon Hill's deposition, pg. 102; 133-134 (admitted he said words similar to "Eff you, bitch").  The parent so concerned about the argument with Plaintiff that she attempted to get a protective order against the Plaintiff.  *See* Exhibit 1, LaDon Hill's deposition, pgs. 103-104.

12. On December 16, 2012, due to the argument with the parent, Plaintiff was placed on a 30-day unpaid administrative leave.  He was informed that he was not to communicate

with any member of the congregation regarding his employment or any Staff Parish Relations Committee issues, and "non-compliance may result in immediate termination." *See* Exhibit 12, Letter dated December 16, 2012; Exhibit 1, LaDon's deposition, pgs. 104-105.

13. Plaintiff admitted he directly violated the instructions to refrain from discussing his employment.   *See* Exhibit 3, Ladon Hill's timeline ("The suspension note says that if I tell a member of the congregation that I was suspended 30 days without pay, that I would be immediately terminated.  So what do I do?  I tell the world."); Exhibit 1, LaDon Hill's deposition, pgs. 106-108 ("Yea, I told them I was suspended, and I might have sent a text here and there.  But yeah, I spread that like the Beatles.")

14. On January 27, 2013, after Plaintiff returned from his suspension, he informed his new boss, the Director of Children and Youth Services, that he would take over doing the youth lessons for a few weeks.  *See* Exhibit 1, LaDon Hill's deposition, pgs. 109-110; Exhibit 3, LaDon Hill's timeline.   Plaintiff was informed that some parents were concerned that Plaintiff was trying to push the Director out of the way to take over the youth group, and, in response, Plaintiff said, "if anybody thought that, they can take those thoughts and stick it."  *See* Exhibit 1, LaDon Hill's deposition, pg. 110; Exhibit 3, LaDon Hill's timeline.

15. On February 1, 2013, a new church van policy was issued limiting transportation to children and youth for weekly activities to a two mile radius of the church.  *See* Exhibit 13, New Van Policy.   Plaintiff disagreed with the policy and emailed the church leadership regarding his disagreement.  In his emails, he never makes any mention that the van policy is racially discriminatory, but stated "90 percent of our youth live more

than 2 miles from this church." *See* Exhibit 14, Email chain re: New Van Policy; Exhibit

1, LaDon Hill's deposition, pgs. 111-113.  In deposition, Plaintiff agreed that most of the

members of the MDUMC congregation lived more than two miles away without regard

to race.  *See* Exhibit 1, LaDon Hill's deposition, pgs. 114-115, 128.

16. After his email to the church leadership regarding the new van policy, he "let it go"

because "parents had vehicles".  *See* Exhibit 1, LaDon Hill's deposition, pgs. 111-113.

17. Plaintiff was terminated on February 10, 2013.  *See* Doc No. 13, Stipulations, Section C.

## III.    ARGUMENTS AND AUTHORITIES

### A.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  The plain language of Rule 56 mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  In such a case, there can be "no genuine

issue as to any material fact," since a complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial.  *Id.* at 322-323.  The

moving party is entitled to judgment as a matter of law because the nonmoving party has failed

to make a sufficient showing on an essential element of his case with respect to which he has the

burden of proof.  *Id.* at 323.  Summary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole,

which are designed "to secure the just, speedy and inexpensive determination of every action."

*Id.* at 327 *citing to* Fed.Rule Civ.Proc. 1; *see* Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 467 (1984).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Id.* The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). In essence, though, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52.

### B. PLAINTIFF'S RACE DISCRIMINATION CLAIM FAILS AS A MATTER OF LAW

Plaintiff claims MDUMC engaged in racial discrimination in violation of 42 U.S.C. § 1981 by terminating Plaintiff "based on his race and retaliating against him for complaining of racial conduct." *See* Doc. No. 2-2 at ¶ 4. Specifically, he alleges he was terminated in retaliation for complaining that the MDUMC'S van's policy was racially discriminatory. *See* Doc. No. 2-2 at ¶ 5. Plaintiff's claims are without merit, and Plaintiff has no evidence of any such discrimination. Plaintiff's employment with MDUMC was terminated for his own destructive, antagonistic behavior, which interfered with his ability to be an effective youth pastor for the church. In fact, in Plaintiff's own timeline of the events, he documents his anger and animosity towards his employer and the complete breakdown of the employer/employee relationship.

However, <u>he never mentions his race as an issue</u>.

Under the *McDonnell Douglas* framework, the Plaintiff carries the initial burden under the statute of establishing a prima facie case of racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). If the Plaintiff can prove a prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. *Id.* The Court's role is not to second guess the employers' business judgments, but to exercise a very limited review of the employment practices of the employer to see if the practices are shown to be lawful. *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983). If the employer makes this showing, the burden shifts back to the Plaintiff to show that the employer's stated nondiscriminatory reason is mere pretext for discriminatory animus. *McDonnell Douglas, supra*. at 804; *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007).

### a.  Plaintiff cannot establish a prima facie case of race discrimination.

Plaintiff claims he was terminated by MDUMC on February 10, 2013 because he was African American. *See* Doc. No. 2-2 at ¶ 4. To make out a prima facie case of discrimination, the Plaintiff must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees. *Orr v. City Of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). It is undisputed that Plaintiff is an African American and was terminated by MDUMC on February 10, 2013. *See* Uncontroverted Facts Nos. 1 and 17. However, Plaintiff cannot carry his burden because he does not "show that [he] 'essentially did the same type of work' as the employees [he] point[s] to for purposes of comparison." *See Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1171 (10th Cir.1998) *quoting Fallis v. Ken-McGee Corp.*, 944 F.2d 743, 745 (10th Cir.1991). The only evidence that

Plaintiff alludes to in order to evidence discrimination is "two white male Church members being allowed to walk down the center aisle and sit down in the front without incident."  *See* Doc. No. 2-2 at ¶ 4 and Exhibit 15, Plaintiff's Answer to Interrogatory No. 3.   However, "church members" are clearly not in a comparable position to the Plaintiff.   There is no evidence that these "church members" were employed by MDUMC or had the same job duties and responsibilities as Plaintiff, a part-time youth minister.

Plaintiff has absolutely no evidence that any non-minority employees of MDUMC were treated differently.  In fact, Plaintiff testified that Pastor Sharon bullied ***everyone*** without regard to race.  *See* Uncontroverted Fact No. 9.  Plaintiff has not provided any evidence to support his allegations of race discrimination, and mere conclusory allegations are insufficient to defeat summary judgment. *Anderson, supra.* at 252.  Thus, summary judgment in favor of Defendant should be granted.

### b.  MDUMC proffered a legitimate, non-discriminatory reason for the termination of Plaintiff.

Assuming, *arguendo*, that Plaintiff could establish a genuine issue of material fact concerning his prima facie case, which he cannot; his claim still cannot survive summary judgment because MDUMC offered legitimate, non-discriminatory reasons for its actions.  Here, Plaintiff's termination was the culmination of several months of persistent insubordination and hostile behavior.   Specifically, Plaintiff ignored MDUMC's instructions and shared with members of the congregation that the Director of Children and Youth Services was on "study leave".  *See* Uncontroverted Fact No. 3.   When the Director was terminated, he reacted destructively, threw a weight into a church wall, and made threatening statements – "I feel like I want to rip somebody's head off".  *See* Uncontroverted Fact No. 4.  He interrupted a church service to publicly complain that the Director was "fired for no reason".  *See* Uncontroverted

Fact No. 5.

He also submitted a divisive and inappropriate article for the church newsletter and continued to antagonize the church leadership, even calling the pastor "Bane". *See* Uncontroverted Facts Nos. 6 and 8. Bane is a supervillain, and the character's origin was in *Batman: Vengeance of Bane #1*. *See* Exhibit 11, November 12, 2012 Conference Call. Plaintiff referred to himself and his youth group as the "Dark Knights" after Batman. *See* Exhibit 1, LaDon Hill's deposition, pg. 38. By Plaintiff's reference to the pastor as "Bane", Plaintiff intended to convey to church members and youth that he felt the church pastor was his arch-enemy and/or arch-villain, who he must fight against.

Plaintiff's insubordinate, disruptive behavior continued for several months. Church youth were found with no supervision in violation of the Safe Sanctuaries policy. *See* Uncontroverted Fact No. 7. MDUMC's pastor had a meeting with the Plaintiff to deliver his employee warning notifications and attempt to counsel him regarding his inappropriate behavior; however, plaintiff stated he would not move on. *See* Uncontroverted Fact No. 10. Subsequently, Plaintiff had an argument with a youth parent, which was so threatening and volatile that the parent attempted to get a protective order against the Plaintiff. *See* Uncontroverted Fact No. 11. Due to the argument, Plaintiff was placed on an administrative leave and was instructed to refrain from communicating with any member of the congregation regarding his employment as "non-compliance may result in immediate termination." *See* Uncontroverted Fact No. 12. Yet again, Plaintiff purposefully violated MDUMC's instructions. *See* Uncontroverted Fact No. 13. When he returned from his suspension, he took over the youth lessons from his boss, the new Director of Children and Youth Services. *See* Uncontroverted Fact No. 14. Plaintiff was informed that some parents were concerned that Plaintiff was trying to push the Director out of

the way and take over the youth group.  In response, Plaintiff said, "if anybody thought that, they can take those thoughts and stick it."   *Id.*   Due to his continued aggressive, insubordinate behavior, Plaintiff was terminated on February 10, 2013.  *See* Uncontroverted Fact No. 17.

Despite efforts to counsel the Plaintiff to improve his behavior, Plaintiff failed to demonstrate that he would be able to cooperatively work with MDUMC to deliver effective ministry to the youth.  As Plaintiff has failed to meet his prima facie burden and the Defendant has presented legitimate, non-discriminatory reasons for terminating Plaintiff, summary judgment is appropriate.

### c.  Plaintiff cannot establish a prima facie case of retaliation.

Plaintiff also claims that his termination was in retaliation for his complaints of "racial conduct."  *See* Doc. No. 2-2 at ¶ 4.  Specifically, he alleges he was terminated for complaining about a church van policy, which was racially discriminatory.  *See* Doc. No. 2-2 at ¶ 5.  To state a prima facie case of retaliation, Plaintiff must demonstrate that: (1) he engaged in protected opposition to discrimination; (2) MDUMC took an adverse employment action against him; and (3) there exists a causal connection between the protected activity and the adverse action.  *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004).  "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]."   *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008); *see also Anderson v. Acad. Sch. Dist. 20*, 122 Fed.Appx. 912, 916 (10th Cir. 2004) (unpublished) ("a vague reference to discrimination and harassment without any indication that this misconduct was motivated by race (or another category protected by Title VII) does not constitute protected activity and will not support a retaliation claim.")

Here, Plaintiff has not met his prima facie burden.  Plaintiff alleges that he complained about the new church van policy that limited weekly youth transportation to a two mile radius of the church.  *See* Uncontroverted Fact No. 15.  Plaintiff disagreed with the policy and emailed church leadership.  *Id*.  However, prior to his termination, Plaintiff never complained that the new van policy was racially discriminatory.  *See* Uncontroverted Fact No. 16.  In fact, he "let it go" after he sent his email and admitted that most members of the congregation lived more than two miles away from the church.  *Id*.

Plaintiff cannot demonstrate that he engaged in "protected opposition" because he did not oppose protected activity.  His complaint regarding the new van policy never mentioned, nor did it involve any protected activity under Title VII.  *See, e.g., Faragalla v. Douglas Cty. Sch. Dist. RE 1*, 411 Fed.Appx. 140, 148 (10th Cir. 2011) (unpublished) (affirming district court's determination that some of plaintiff's complaints did not constitute protected opposition because the complaints failed to mention the victim's "race, religion, or national origin, or alleged discrimination or harassment on any unlawful basis," nor did plaintiff provide any evidence that her supervisors perceived those complaints as relating to unlawful discrimination).  The absence of a reference to unlawful discrimination precludes Plaintiff's retaliation claim because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII.  *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) *also citing Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993) ("plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity"); *Gallagher v. Kleinwort Benson Gov't Sec., Inc.*, 698 F.Supp. 1401, 1405–07 (N.D.Ill.1988) (complaint of unequal pay did not suggest gender discrimination).  As a result, Plaintiff has failed to meet the burden of proving a prima facie case for retaliation, and

Defendants are entitled to summary judgment.

### d. MDUMC proffered a non-discriminatory basis for terminating Plaintiff.

As shown above, even if Plaintiff met his prima facie burden for a retaliation claim, MDUMC has proffered a legitimate, non-discriminatory basis for terminating the Plaintiff, and summary judgment for the Defendant is warranted.

### e. Plaintiff has no evidence of pretext.

Finally, Plaintiff has no evidence that MDUMC's stated non-discriminatory reasons for terminating him were a mere pretext for discriminatory animus.  In fact, when specifically asked in deposition for all evidence of retaliation, Plaintiff had no evidence of racial discrimination and merely recounted his disagreements and acrimonious relationship with MDUMC.  *See* Exhibit 1, LaDon Hill's deposition, pgs. 128-130.  Plaintiff's claims of racial discrimination are nothing more than conclusory allegations unsupported by any evidence.

## IV.   CONCLUSION

WHEREFORE, premises considered, the Defendant Memorial Drive United Methodist Church respectfully requests the Court grant its Motion for Summary Judgement, award it fees and costs, and grant all other relief the Court deems just and proper.

Respectfully submitted,

**BEST & SHARP**


s/ Carrie B. McNeer
Thomas A. LeBlanc, OBA#14768
tleblanc@bestsharp.com
Carrie B. McNeer, OBA #22235
cmcneer@bestsharp.com
Williams Center Tower 1
One West Third Street, Suite 900
Tulsa, OK 74103
Telephone: (918) 582-1234
Facsimile: (918) 585-9447
*Attorneys for Defendant, Memorial Drive*
*United Methodist Church*

## CERTIFICATE OF MAILING

I hereby certify that on the 4th day of January, 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Brendan M. McHugh
bmcq1990@gmail.com; mchugh8@att.net

Dana Jim
danajimlaw@gmail.com

*Attorneys for Plaintiff*


s/ Carrie B. McNeer

{00457021}                    14